## MOLLER v. HERRING.

(Circuit Court of Appeals, Fifth Circuit.   March 11, 1918.)

No. 3059.

CONTRACTS ⊜➳108(2)—CONSTRUCTION—VALIDITY.

> Where, in the Galveston storm of 1915, a great quantity of cotton was washed from the island of Galveston to the mainland, an agreement entered into by defendant, who was the owner of 1,000 bales of cotton to pay plaintiff $10 per bale for each bale reclaimed, is not unlawful and void, as against good morals and public policy, or as tending to interfere with public justice, no suit having been instituted for the appointment of a receiver to take charge of all of the cotton, for any person having an interest in any of the cotton was at liberty to collect any part of it in order to conserve that interest.

> Foster, District Judge, dissenting.

In Error to the District Court of the United States for the Southern District of Texas; Waller T. Burns, Judge.

Action by A. L. Moller against F. E. Herring.   There was a judgment for defendant, and plaintiff brings error.   Reversed and remanded.

Maco Stewart and Barret Gibson, both of Galveston, Tex., for plaintiff in error.

B. B. Stone, of Ft. Worth, Tex., for defendant in error.

Before WALKER and BATTS, Circuit Judges, and FOSTER, District Judge.

BATTS, Circuit Judge.   Plaintiff in error, plaintiff below, alleged that about September 2, 1915, the defendant represented to him that on August 16, 1915, he had stored in the Galveston Cotton Compress and Warehouse at Galveston, more than 1,000 bales of cotton, which were washed away and lost in the storm of August 16–17, 1915, and that this cotton, together with a great deal of other cotton, had been carried from its place of storage and deposited on the prairie of the mainland; that the marks and brands had been obliterated and the identity of the cotton lost; that the defendant contracted with him to save and gather for the defendant as much as possible of the cotton, not to exceed 1,000 bales, and represented to him that he was entitled to regain possession of that amount of cotton, and agreed in writing that for each and every bale of cotton plaintiff might recover defendant would pay him $10 "f. o. b. cars."   The plaintiff alleges that at the time the contract was made many persons were engaged in recovering and buying this lost and storm-damaged cotton.   He further alleges that, upon the making of the contract, he hired teams and laborers, and began to gather up and haul to a safe place all the bales of cotton he could, and that he had so saved 578 bales, and placed them on board cars at Alta Loma.   He alleges that, out of the 578 bales of cotton, 68 were delivered to and received by the defendant, and shipped by him away from Alta Loma.   He further alleges that on September 3d a suit was instituted in the district court, wherein a receiver

was appointed to gather up and collect all unidentified storm-damaged cotton which had been deposited on the mainland in Galveston county, and that the receiver, on the 4th of September, demanded of this plaintiff the 510 bales of cotton collected by him for defendant. He refused to deliver this cotton to the receiver, whereupon he and the defendant Herring were impleaded, and the court directed that he and the defendant deliver the cotton to the receiver, which was thereupon done.

The defendant Herring filed a general demurrer and special exceptions to this petition, which the court sustained, and in the final judgment expressed the opinion "that the contract sued upon is unlawful and void, as against good morals and public policy, and as against the laws of the land, and as being and tending to be an interference with public justice and with this court." The cause was dismissed.

The statutes of Texas provide for compensation to persons who gather cotton under the conditions existing as the result of a storm. At the time this contract was entered into, a large quantity of cotton, perhaps in excess of 20,000 bales, had been swept from the places of storage on Galveston Island to the mainland. No action had been taken by any court with reference to the collection and preservation of this property. Any person having an interest in any of the cotton was certainly at liberty to collect any part of it, or all of it, in order to conserve this interest. The contract stipulated for a greater compensation than was provided by law; but it might, nevertheless, have been to the interest of Herring to pay for the collection of the cotton a sum in excess of what he would be allowed upon an adjustment of the rights of the parties. The rights of the other owners in the cotton could in no way be affected by the contract between Moller and Herring, but it was for Herring to determine what he was willing to pay that his property and rights might be preserved, and for Moller to determine whether he would accept this amount as compensation for his labor and expense. It is difficult to understand how this contract, entered into as it was before any suit had been instituted, could constitute an interference with public justice and with the court. It is also difficult to understand how this private arrangement between Moller and Herring could be, in any sense, against good morals and public policy. The contract could not have affected the rights of other owners in the cotton, and did not purport or undertake to affect these rights. Moller continued to carry out his contract, until he and Herring were compelled by the court to desist. He collected "as much as possible," and became entitled, for all collected under the terms of the contract, to $10 per bale. For the amount paid under the direction of the court in the receivership, defendant is entitled to a credit.

It may be that some of the special exceptions should have been sustained. But the ruling of the court was based upon the proposition that the contract was against "good morals and public policy." No possible amendment could have met the objection of the court. The judgment is reversed, and the cause remanded for proceedings not inconsistent herewith.

Reversed and remanded.

FOSTER, District Judge, dissents.